**UNITED ELECTRICAL, RADIO AND MACHINE WORKERS OF AMERICA, et al., Plaintiffs,**

**v.**

**AMCAST INDUSTRIAL CORP., et al., Defendants.**

No. C–3–84–1001.

United States District Court, S.D. Ohio, W.D.

April 21, 1986.

Robert Lewis, New York City, John R. Doll, Sorrell Logothetis, Dayton, Ohio, for plaintiffs.

Robert J. Brown, Dayton, Ohio, Allan Kover, Christopher B. Nelson, Marcia E. Goodman, Chicago, Ill., for defendants.

## DECISION AND ENTRY CONSTRUING DEFENDANTS' MOTION TO DISMISS AS A MOTION FOR SUMMARY JUDGMENT AND SUSTAINING IN PART AND OVERRULING IN PART SAID MOTION TO WIT: ALL CAUSES OF ACTION ARE DISMISSED EXCEPT COUNT ONE; DECISION SUSTAINING DEFENDANTS' MOTION TO STRIKE JURY DEMAND

RICE, District Judge.

This case is before the Court on Defendants' Motion to Dismiss and to Strike Jury Demand (Doc. # 6). The Motion to Dismiss branch of Defendants' motion argues six grounds for dismissing various portions of Plaintiffs' Complaint: failure to exhaust contractual remedies, lack of standing, failure to state a claim for breach of fiduciary duty under ERISA, lack of a federal common law of health and welfare or pension benefits, pre-emption of state law promissory estoppel and non-availability of punitive and mental distress damages. The Motion to Strike Jury Demand branch of Defendants' Motions argues that Plaintiffs' Complaint raises only equitable claims, and therefore there is no entitlement to a jury trial.

### I. *Factual Background*

This action arises out of the termination on June 4, 1983, of a collective bargaining agreement and "Pension Agreement" between Defendant Amcast Industrial Corpo- ration and Plaintiffs United Electrical, Radio and Machine Workers of America ("UE") and Local 765 ("Local") thereof. The Plaintiffs in this case are the UE, the Local and nine retired employees of Amcast who claim coverage under the Pension Agreement. The Defendants in this case are Amcast, the GHR Division of Amcast, the President of Amcast, the Vice-President of Amcast (sued individually, as Vice-President and as a fiduciary of the Pension Plan) and five other fiduciaries of the Pension Plan.

The events surrounding this action, as alleged by Plaintiffs (*see* Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss (Doc. # 12) at 2–5), began in March, 1983, when Amcast, the UE and the Local submitted notices pursuant to the Collective Bargaining Agreement (Exh. 2 to Affidavit of Thomas G. Amato (attached to Doc. # 7)) and the Pension Agreement (Exh. 2 to Affidavit of Thomas G. Amato (attached to Doc. #7)) that had been in effect since June 1, 1980, to terminate those agreements and to bargain for new ones. Prior to commencement of the new negotiations, Amcast had closed its GHR Division and had laid off all bargaining unit employees by April 1, 1983. Nevertheless on April 15, May 6, 18, 26, 31, June 1 and 6, 1983, the UE and the Local met with Amcast for purpose of negotiating new agreements. During these negotiations, Amcast proposed a number of wage and fringe benefit reductions for bargaining unit employees, including reductions in existing retirees' supplemental pension benefits and retirees' medical and life insurance benefits. The UE and the Local refused to negotiate reductions in pension supplements or health and life insurance benefits for existing retirees.

In the negotiation meeting which occurred on June 6, 1983 (two days after expiration of the agreements), Leslie J. Brunskill, Amcast's representative, handed John Hovis, the UE and the Local's representative, a letter addressed to retired employees, which announced that Amcast was terminating existing retirees' medical and

life insurance benefits and early retirement pension supplements effective June 30, 1983. Mr. Hovis told Mr. Brunskill that the Local wanted to file a grievance contesting this termination of benefits. Mr. Brunskill stated, however, that Amcast would not accept or process a grievance or agree to arbitrate the termination because Amcast believed it had no obligation under either the Collective Bargaining Agreement or the Pension Agreement to do so, since these agreements had expired as of June 4, 1983.

The negotiations between Amcast, the UE and the Local continued from June 6, 1983 through November, 1983. Throughout this period Amcast represented to the UE and the Local that the Pension Agreement had expired, but that the "Pension Plan" was still in effect. On request for a copy of the Pension Plan by Mr. Hovis, Mr. Brunskill indicated that the only document in existence was the Pension Agreement. When a participant in the Pension Plan, Plaintiff Rubbennie Stephens, requested a copy of the Pension Plan document by a letter dated October 6, 1983, Mr. Brunskill sent a copy of the Pension Agreement.

In a January 20, 1984 negotiating session, held for the purpose of engaging in bargaining relative to the permanent closing of the GHR foundry, Mr. Brunskill presented the UE and the Local with a draft of a new Pension Plan document dated September 28, 1983. Mr. Brunskill told Mr. Hovis at this meeting that this document was a draft which Amcast did not intend to unilaterally implement, and that the original Pension Agreement was still in effect. By a letter dated March 21, 1984, addressed to Mr. Brunskill, Mr. Hovis set forth the UE and the Local's position opposing cancellation of retirees' medical and life insurance benefits and early retirement pension supplements. Mr. Hovis also requested arbitration under the terms of the Pension Agreement. However, by letter dated April 18, 1984, Amcast notified the UE and the Local that the draft Pension Plan presented on January 20, 1984, had been unilaterally implemented by Amcast. Mr. Hovis, by a letter dated May 14, 1984,

again requested Amcast to arbitrate the dispute as to termination of the retirees benefits. At a meeting between the parties on May 17, 1984, Mr. Brunskill presented an Amended and Restated Pension Plan document, along with a Summary Plan Description summarizing this Pension Plan, which drastically amended the Pension Plan retroactive to June 5, 1983. No further meetings were held between Amcast, the UE and the Local regarding either the closing of the GHR Division or Amcast's termination of retirees' medical and life insurance benefits and early retirement supplements.

Plaintiffs' Complaint contains seven counts. The first count alleges a claim under the Labor Management Relations Act (LMRA). The second, third and fourth counts allege claims under the Employee Retirement Income Security Act (ERISA). Count Five alleges claims under federal common law. Count Six alleges claims under the doctrine of estoppel. Count Seven seeks damages for emotional suffering and punitive damages.

## II. *Motion to Dismiss*

As indicated previously, the Defendants' Motion to Dismiss argues six grounds for dismissal of various portions of Plaintiffs' Complaint: failure to exhaust contractual remedies, lack of standing, failure to state a claim for breach of fiduciary duty under ERISA, lack of federal common law of health and welfare or pension benefits, preemption of state law promissory estoppel and non-availability of punitive and mental distress damages. Because both the Plaintiffs and the Defendants have supported their arguments with affidavits and other material outside the pleadings, the Court will treat this motion as a Motion for Summary Judgment. *See* Fed.R.Civ.P. 12(b).

### A. *Exhaustion*

The Defendants first argue that the UE, the Local and the individual retiree Plaintiffs' claims under both ERISA and the LMRA must be dismissed because the

Plaintiffs have failed to exhaust the contractual dispute resolution mechanisms of the Collective Bargaining Agreement and the Pension Agreement. However, for the reasons set forth below, the Court finds that genuine issues as to material fact exist on whether the Plaintiffs fall within any exception to the exhaustion requirement, and so Defendants' motion is overruled on its argument that Plaintiffs have failed to exhaust contractual remedies.

█ Under both the LMRA and ERISA, exhaustion of contractual dispute resolution mechanisms is generally a prerequisite to review of the dispute by the courts. In the context of suits brought under the LMRA § 301, 29 U.S.C. § 185, exhaustion of contract remedies has long been considered a prerequisite to a damages lawsuit. *See, e.g., Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); *Drake Bakeries, Inc. v. American Bakery & Confectionary Workers Int'l*, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962). Similarly, the courts construing ERISA have implied exhaustion of a plan's review procedures as a prerequisite to lawsuit under that Act. *See Kross v. Western Electric Co.*, 701 F.2d 1238 (7th Cir.1983); *Amato v. Bernard*, 618 F.2d 559 (9th Cir.1980); *Cowden v. Montgomery County Soc. for Cancer Control*, 591 F.Supp. 740 (S.D.Ohio 1984).

However, exceptions exist to the general prerequisite of exhaustion. In *Anderson v. Alpha Portland Industries, Inc.*, 752 F.2d 1293, 1298 (8th Cir.) (en banc), *cert. denied*, —— U.S. ——, 105 S.Ct. 2329, 85 L.Ed.2d 846 (1985), the court held that usual presumption in favor of arbitrability does not apply to contract language that creates benefits for retirees, and thus concluded that the language of the collective bargaining agreement therein did not require retirees to exhaust contractual remedies prior to filing a lawsuit. In concluding that the usual presumption in favor of arbitrability does not apply to retirees, the *Anderson* court relied upon case law indicat-

ing that while retirees may seek to preserve their rights under a collective bargaining agreement through a union's assistance, the union has no duty to represent the retirees and the retirees may therefore seek to enforce their rights without assistance from a union. *See Schneider Moving and Storage v. Robbins*, 466 U.S. 364, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984); *Allied Chem. & Alkali Workers v. Pittsburgh Plate Glass*, 404 U.S. 157, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971); *International Union, U.A.W. v. Yard-Man, Inc.*, 716 F.2d 1476, 1484–87 (6th Cir.1983). Absent the requirement that individuals act through the union in the context of retiree rights, application of a presumption of arbitrability would not serve its usual purpose of protecting the integrity of the collective bargaining process. Accordingly, the *Anderson* court concluded that the language of the collective bargaining agreement must be read without a presumption of arbitrability to determine if retirees who are entitled to benefits under that agreement must exhaust contractual remedies prior to filing suit.

█ Applying the *Anderson* analysis to this case, the Court finds that, at a minimum, a genuine issue exists as to whether the retiree Plaintiffs are required to exhaust the dispute resolution methods provided in the Collective Bargaining Agreement and the Pension Agreement. Under the Collective Bargaining Agreement, the grievance procedure is only applicable when "differences arise between the Company and the UE or its members *employed* by the Company, or [when] any local trouble of any kind arises *in the plant....*" Exh. 1 to Affidavit of Thomas G. Amato (attached to Doc. #7) at ¶ 137 (emphasis added). The Pension Agreement provides:

If during the term of this Agreement any difference shall arise concerning an *employee's* age, service credits, or pension benefits, the questions will be referred to the Committee for determination. If the difference is not resolved by the Committee and it involves a question of the interpretation of the provisions of

this Pension Agreement, the dispute may be submitted to an impartial arbitrator to be selected by the Committee who shall have authority only to interpret and apply the provisions of this Agreement to the facts involved in the particular dispute, but who shall not have authority in any way to alter, add to, or subtract from any such provisions. The arbitrator's decisions on any dispute properly referred to him shall be binding on the Company, the UE, and the *employee* involved.

Exh. 2 to Affidavit of Thomas G. Amato (attached to Doc. # 7) at ¶ 48 (emphasis added).

Both the Collective Bargaining Agreement and the Pension Agreement, thus, by their explicit language, refer only to *employees* and events occurring within the plant in describing the dispute resolution methods contractually available. Amcast argues that "employee" must be read to include retirees because most disputes regarding pension benefits would involve retirees rather than active employees. Such an argument may indicate that a genuine issue exists as to whether the retirees are covered by the contracts' dispute resolution mechanisms. This is a factual issue. Absent a presumption of arbitrability, the Court cannot conclude, for purposes of a motion for summary judgment, that retirees are required to utilize the contract dispute resolution mechanism prior to filing a lawsuit. Accordingly, Defendants' motion is overruled insofar as it seeks dismissal of the retiree Plaintiffs based upon their failure to exhaust contract remedies.

 The Plaintiffs, through the affidavit of John H. Hovis, Jr. (Doc. # 14), also make allegations sufficient to raise a genuine issue as to whether Amcast's conduct bars it and the other Defendants from raising the exhaustion defense against the UE, the Local and the retiree Plaintiffs. When a company's acts make pursuance of contractual dispute resolution mechanisms by an employee or union futile or constitute a repudiation of the contract, the company is estopped from raising exhaustion as a defense in a resulting lawsuit. *See Vaca v. Sipes*, 386 U.S. 171, 185–86, 87 S.Ct. 903, 914–15, 17 L.Ed.2d 842 (1967); *United States Tile, Slate & Composition Roofers Local 307 v. G & M Roofing and Sheet Metal Co.*, 732 F.2d 495, 500–01 (6th Cir. 1984); *Day v. U.A.W. Local 36*, 466 F.2d 83, 96–97 (6th Cir.1972). According to the affidavit of John H. Hovis, Jr., Amcast on several occasions refused to arbitrate or convene a meeting of the Joint Pension Committee regarding the dispute which is the subject of this lawsuit. *See* Doc. # 14 at ¶¶ 8, 13 and 21. In refusing these requests for implementation of the contractual dispute resolution mechanisms, Amcast allegedly indicated that the Collective Bargaining Agreement and the Pension Agreement had terminated and that it was therefore not bound by those mechanisms. *Id.* at ¶¶ 8 and 13. The Affidavit of Thomas G. Amato (attached to Doc. # 7) indicates that arbitration was requested by Plaintiffs on only one occasion and that no Plaintiff attempted to utilize either the Collective Bargaining Agreement or Pension Agreement grievance procedures. *Id.* at ¶¶ 11–12. Based upon these contradictory allegations in the two affidavits, the Court finds that genuine issues exist as to whether Amcast is estopped from raising exhaustion as a defense in this action.

### B. *Failure to State a Claim Under ERISA*

Defendants' Motion also argues that Counts Two, Three and Four of the Plaintiffs' Complaint fail to state a claim under ERISA and therefore should be dismissed.[1] Upon review of the statute and relevant authorities, the Court agrees.

Plaintiffs' Second, Third and Fourth claims essentially allege that the Defend-

---

1. Defendants also argue that the UE and the Local lack standing to bring claims of breach of fiduciary duty under ERISA. However, because the Court finds Plaintiffs' Complaint fails to state a claim of breach of fiduciary duty under ERISA, it does not reach the issue of standing under that statute.

ants have breached their fiduciary duties as established under ERISA by unilaterally terminating the early retirement supplemental benefits provided for in the Pension Agreement.[2] Plaintiffs argue that these early retirement supplemental benefits were vested, non-forfeitable and unconditional, and that the Defendants' termination thereof breached their fiduciary duty in violation of 29 U.S.C. § 1104. That statute provides in part:

**Prudent man standard of care.** (1) Subject to sections 403(c) and (d) [29 U.S.C. § 1103(c) and (d) ], 4042 [29 U.S.C. § 1342], and 4044 [29 U.S.C. § 1344], a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(D) in accordance with the document and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title or title IV.

From this section, Plaintiffs conclude that the Defendants' unilateral amendment of the Pension Agreement was ineffectual and a violation of the Defendants' statutory fiduciary duties. Essentially, Plaintiffs argue that an employer, who is also the fiduciary of a plan covered by ERISA, cannot exercise the right accorded other employers to renegotiate or amend benefits payable before normal retirement age.

■ Plaintiffs' argument, however, misconstrues the duties of a fiduciary and the concept of vesting under ERISA. Under 29 U.S.C. § 1053, only accrued benefits can become vested or non-forfeitable under ERISA. *See Bencivenga v. Western Pennsylvania Teamsters,* 763 F.2d 574, 578 (3d Cir.1985); *Hoover v. Cumberland Maryland Area Teamsters Pension Fund,* 756 F.2d 977, 983–84 (3d Cir.1985). Moreover, it is *accrual* of benefits, not vesting, which protects them from being decreased by amendment of a plan: "The *accrued* benefit of a participant under a plan may not be decreased by an amendment of this plan, other than an amendment described in section 302(c)(8) [29 U.S.C. § 1082(c)(8) ]." 29 U.S.C. 1054(g) (emphasis added); *see also Hoover,* 756 F.2d at 984 ("Section 204(g) [29 U.S.C. § 1054(g) ] protects all accrued benefits from reduction by plan amendment, vested or not, and without regard to whether benefits are currently being paid to a participant who has already retired.")

■ ERISA's definition of accrued benefits is not a model of clarity: "The term 'accrued benefit' means ... the individual's accrued benefit determined under the plan and, except as provided in section 204(c)(3) [29 U.S.C. § 1054(c)(3) ], expressed in the form of an annual benefit commencing at normal retirement age...." 29 U.S.C. § 1002(23).[3] The majority of courts that have construed this definition have held that early retirement benefits, such as those at issue in this case, do not fall within this definition of accrued benefits. *See Bencivenga,* 763 F.2d at 577; *Sutton*

---

**2.** Plaintiffs do not claim that the termination of health and life insurance benefits violated ERISA; accordingly, that issue will not be addressed.

**3.** "Normal retirement age" means, for purposes of ERISA either age 65 or the tenth anniversary of the time a plan participant commenced participation, whichever occurs later, or the normal retirement age set forth in a plan. For purposes of this plan, age 62 is defined as the normal retirement age. *See* Pension Agreement, Exh. 2 to Affidavit of Thomas G. Amato (attached to Doc. # 7) at ¶ 15.

*v. Wierton Steel Division of National Steel Corp.*, 724 F.2d 406, 410 (4th Cir. 1983), *cert. denied*, 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984). However, in *Amato v. Western Union International, Inc.*, 773 F.2d 1402, 1407–14 (2d Cir.1985), the Second Circuit construed the term "expressed in the form of" to include early retirement benefits that are "calculated by precisely the same formula and expressed as the same dollar amount payable at age 65 ..." within the definition of accrued benefits. In support of this conclusion, the *Amato* court relies upon the legislative history of the Retirement Equity Act of 1984 (which amended ERISA)[4] and an I.R.S. regulation, 26 C.F.R. § 1.411(d)–3(b) (1984), regarding the prohibition of decreases in accrued benefits.

Regardless of whether the majority rule or the *Amato* rule is applied to the present facts, it is clear that the early retirement supplemental benefits are not accrued benefits within the ERISA definition. If the *Amato* court's construction of § 1002(23) is accepted, the Pension Agreement in this case still indicates that the early retirement supplemental benefits in question are not calculated in a manner similar to that used to calculate normal retirement benefits. Normal retirement benefits are calculated by multiplying $16 per month by the number of years of credited service prior to retirement. *See* Exh. 2 to Affidavit of Thomas G. Amato (attached to Doc. # 7) at ¶ 19. Early retirement supplemental benefits are flat rate monthly payments whose amount is determined solely by the date of retirement. *See id.* at ¶ 22. Thus, even under the expansive definition set forth in *Amato*, the early retirement supplemental benefits provided for in this Pension Agreement are not accrued benefits protected by 29 U.S.C. § 1054(g).

■ Plaintiffs', however, argue that, while 29 U.S.C. § 1054(g) protects accrued benefits, under the general fiduciary responsibility provisions of 29 U.S.C. § 1104, the Defendants may not amend a plan to terminate vested, non-accrued benefits. In making such an argument Plaintiffs ignore the fact that ERISA is concerned only with the vesting of accrued benefits. *See* 29 U.S.C. § 1053. ERISA is structured to provide protection against termination of those benefits classified as accrued. To construe § 1104 to protect vested, non-accrued benefits from termination by fiduciaries would be to contravene the congressionally mandated scope of ERISA benefit protections. *See United Independent Flight Officers, Inc. v. United Air Lines*, 756 F.2d 1262, 1268 (7th Cir.1985); *Sutton*, 724 F.2d at 410. Further, such a fiduciary duty would prohibit an employer who serves as a fiduciary from exercising the right accorded other employers of terminating or awarding a non-accrued employee benefit plan. *See Bencivenga*, 763 F.2d at 578; *Viggiano*, 750 F.2d at 279–80; *Sutton*, 724 F.2d at 411. For these reasons, this Court declines to extend the fiduciary duty of 29 U.S.C. § 1104 to prohibit employers who are fiduciaries of an ERISA plan from amending that plan to reduce or terminate vested, non-accrued benefits.

In sum, the Court finds that the early retirement supplemental benefits described in the Pension are not accrued benefits, protected by 29 U.S.C. § 1054(g), and that Amcast and its officers who served as plan trustees are not under an ERISA-created fiduciary duty not to terminate these vested, non-accrued early retirement supplemental benefits. Therefore, Counts Two, Three and Four of the Plaintiffs' Complaint are dismissed for failure to state a claim under ERISA.

### C. *Federal Common Law*

■ The Fifth Count of Plaintiffs' Complaint alleges that the termination of benefits by the Defendants violates the federal common law of health and welfare or pen-

---

**4.** The Retirement Equity Act of 1984, P.L. 98–397, 98 Stat. 1426 § 302(d)(1), which has the effect of protecting early retirement benefits in the same manner as accrued benefits did not take effect until July 30, 1984, and so is not directly relevant to the termination of benefits in this case.

sion benefits. Plaintiffs argue that such common law is required to fill the void in areas where ERISA does not specifically provide for regulation of pension or health and welfare plans. However, the effect of such a federal common law would be to create a protection against termination of vested, non-accrued benefit rights by employers. The Court believes that no real void exists in the field of protection of employee benefits from employer termination. As the Court has already indicated, ERISA provides protection for those employee benefit rights which fall within the category of accrued benefits. Rights to benefits which are contractually created under a Collective Bargaining Agreement are protected under the LMRA. *See, e.g., International Union, U.A.W. v. Yard-Man, Inc.,* 716 F.2d 1476 (6th Cir.1983). In light of this dual protection of employee benefit rights, the Court can find no basis for creation of a federal common law to extend beyond the protections afforded employees by Congress under ERISA and the LMRA. Accordingly, Count Five of Plaintiffs' Complaint is dismissed for failure to state a claim.

D. *Preemption of State Law*

■ Count Six of Plaintiffs' Complaint claims that Defendants' termination of the employee benefits in question is barred under the state law of promissory estoppel because of Defendants' representations that the Pension Agreement would not be unilaterally amended. The seventh count of Plaintiffs' Complaint, in part, requests damages for emotional distress under state law. The Court, however, finds both of these claims preempted by ERISA.

29 U.S.C. § 1144(a) provides in part: "Except as provided in subsection (b) of this section, the provisions of this title and Title IV shall supersede any and all state law insofar as they may now or hereafter relate to any employee benefit plan described in section 4(a) [29 U.S.C. § 1003(a)]

and not exempt under section 4(b) [29 U.S.C. § 1003(b)]." The courts have uniformly held that the scope of this preemption is to be construed extremely broadly. *See Shaw v. Delta Air Lines,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983); *Blakeman v. Mead Containers,* 779 F.2d 1146, 1151 (6th Cir.1985); *Authier v. Ginsburg,* 757 F.2d 796 (6th Cir.1985). "ERISA preemption extends to state common law causes of action as well as state regulatory statutes, and ... claims brought under state law doctrines that do not explicitly refer to employee benefit plans are nonetheless preempted when the claims arise from the administration of such plans." *Blakeman v. Mead Containers,* 779 F.2d 1146, 1151 (6th Cir.1985) (quoting *Scott v. Gulf Oil Corp.,* 754 F.2d 1499, 1504 (9th Cir.1985)). Because it is clear that both the promissory estoppel and emotional distress claims of Plaintiffs arise from Defendants' administration of an ERISA plan, the Court finds these claims preempted by ERISA.[5] Accordingly, Count Six and the emotional distress claim of Count Seven of Plaintiffs' Complaint are dismissed for failure to state a claim upon which relief can be granted.

E. *Punitive Damages*

■ Count Seven of Plaintiffs' Complaint also seeks an award of punitive damages for Defendants' allegedly wrongful termination of benefits. Because Plaintiffs' claims under ERISA have been dismissed, the Court need not consider whether that Act permits the award of punitive damages. Further, punitive damages are not available for violations of the LMRA. *See Electric Workers v. Foust,* 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979); *Farmer v. ARA Services,* 660 F.2d 1096 (6th Cir.1981). Accordingly, the claim for punitive damages in Count Seven of Plaintiffs' Complaint is dismissed.

In sum, Count One of Plaintiffs Complaint, alleging that the Defendants' termi-

**5.** Plaintiffs' Supplemental Authority cites *Rutledge v. Dayton Malleable,* 20 Ohio App.3d 229, 485 N.E.2d 757 (1984), in support of its estoppel claim. While the Court believes this decision is relevant to Plaintiffs' LMRA claim, it does not affect the Court's finding that the estoppel claim is preempted by ERISA.

nation of benefits violated the LMRA, 29 U.S.C. § 185, remains viable. In this regard, genuine issues as to whether Plaintiffs' claim is barred by failure to exhaust contractual dispute resolution mechanisms remain. However, Count Two through Seven of Plaintiffs' Complaint fail to state claims upon which relief can be granted, and are accordingly dismissed with prejudice.

### III. *Motion to Strike Jury Demand*

■ Defendants have also moved for the Court to strike Plaintiffs' jury demand. The Court notes that, because it has dismissed Plaintiffs' ERISA, federal common law and state law claims, the only issue remaining is whether Plaintiffs are entitled to a jury under its first count, based on 29 U.S.C. § 185. In opposing Defendants' Motion to Strike Jury Demand, Plaintiffs argue that their claim under 29 U.S.C. § 185 is a claim for damages and prospective relief for breach of the Collective Bargaining Agreement (including the Pension Agreement). However, Count One of Plaintiffs' Complaint, as currently written, seeks only injunctive relief. It is undisputed that there is no entitlement to a jury when purely injunctive relief is sought. Accordingly, Defendants' Motion to Strike is granted based upon the present language of Plaintiffs' Complaint.

Accordingly, Counts Two through Seven of Plaintiffs' Complaint are dismissed as against all Defendants with prejudice. Defendants' Motion to Strike Plaintiffs' Jury Demand is sustained.